## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **HONEYWELL INTERNATIONAL INC., HAND HELD PRODUCTS, INC., and METROLOGIC INSTRUMENTS, INC.,** Plaintiffs, <br><br> *v.* <br><br> **ZEBRA TECHNOLOGIES CORPORATION,** Defendant. | **6:21-cv-1010-ADA** |

## <u>MEMORANDUM OPINION AND ORDER</u>

Came on for consideration this date is Defendant Zebra Technologies Corporation's ("Zebra's") Motion to Transfer Venue to the Eastern District of New York Pursuant to 28 U.S.C. § 1404(a). ECF No. 24 (the "Motion"). Plaintiffs Honeywell International Inc., Hand Held Productions, Inc., and Metrologic Instruments, Inc., (collectively, "Plaintiffs" or "Honeywell") filed an opposition on March 21, 2022, ECF No. 33, to which Zebra filed a reply on April 4, 2022, ECF No. 41. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **GRANTS** Zebra's Motion to Transfer Venue.

### I. BACKGROUND

Plaintiffs sued Zebra in this Court on September 29, 2021, alleging infringement of U.S. Patent Nos. 7,527,206 (the "'206 patent"), 9,148,474 (the "'474 patent), 9,578,269 (the "'269 patent"), 9,929,906 (the "'906 patent"), and 10,171,767 (the "'767 patent") (collectively, the "Asserted Patents"). *See* ECF No. 1 (the "Complaint"). The Complaint alleges that certain of Zebra's barcode scanners, mobile computers, and scan engines (the "Accused Products") are infringing. *Id.* ¶¶ 36–42.

Honeywell and Hand Held are incorporated in Delaware while Metrologic is incorporated in New Jersey. *Id.* ¶¶ 2–4. Each Plaintiff has its principal place of business in Charlotte, North Carolina. *Id*. Zebra is incorporated in Delaware with its principal place of business in Illinois. *Id.* ¶ 5; ECF No. 24 at 2. Zebra's wholly owned subsidiary, Xplore Technologies Corp., is headquartered in Austin, Texas. ECF No. 1 ¶ 10. Numerous Xplore employees live around Austin. *Id.* Furthermore, Zebra has purportedly invested over two million dollars on an Austin office that has approximately fifty employees. *See* ECF No. 1-7.

Zebra alleges that:

- "Most of the current and former Zebra employees responsible for the design and development of the accused barcode scanner, mobile computing products, and scan engines are in Holtsville, New York." ECF No. 24 at 1.

- The design and development of the accused products occurred in Holtsville, New York. *Id.* at 7.

- The majority of third-party witnesses, including prior art witnesses, are located in the Long Island area. *Id.* at 1, 6.

- Evidence is far more convenient to access in and around New York, unlike Waco. *Id.* at 1.

- Both Zebra and Honeywell lack meaningful ties to this District. *Id*.

- None of Zebra's servers with relevant electronically stored information are located in this District. *Id.*

Zebra notes that the Holtsville, New York office consists of over 1,000 employees dedicated to most of the Accused Products while the Austin facility employs less than 50

employees and only a limited number those have knowledge relevant to the Accused Products. ECF No. 41 at 2.

On December 6, 2021, Zebra filed its Motion. ECF No. 24. That Motion is now ripe for judgment.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)

("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. When analyzing these factors, courts may consider facts arising after plaintiff filed suit unless there is some suggestion that they arose primarily to affect the transfer analysis. *See Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097-ADA, 2022 WL 1593366, at *6 (W.D. Tex. May 19, 2022) (explaining how post-complaint facts must be disregarded when considering § 1404(a)'s preliminary question, but not when evaluating convenience); *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021) (disregarding, under the practical-problems factor, later-filed cases in the transferor district).

The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere

preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III. ANALYSIS

### A.    Venue and Jurisdiction in the Transferee Forum

To satisfy § 1404(a)'s preliminary question, the movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2022 WL 958384, at *5 (W.D. Tex. Mar. 25, 2022). A defendant does not satisfy this burden by merely consenting to jurisdiction in the transferee forum. *See Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S. Ct. 1084, 4 L.Ed.2d 1254 (1960). And the defendant cannot, only for purposes of satisfying § 1404(a), concede that jurisdiction in the transferee forum is proper while simultaneously "maintaining that jurisdiction is legally improper in [the transferee forum] and reserving its right to seek dismissal" on that ground once transfer is complete. *Monolithic Power Sys.*, 2022 WL 958384, at *5; *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) ("[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").

This Court finds, and Honeywell does not contest, that this Action could have been brought in the EDNY. ECF No. 33 at 3.

### B.    Private Interest Factors

#### 1.    Cost of Attendance and Convenience of Willing Witnesses

The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Yet the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having to travel away from their home and work in order to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at \*5 (Fed. Cir. Sept. 27, 2021) (quoting *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See, e.g.*, *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at \*12 (Fed. Cir. Sept. 27, 2021) ("[T]ime is a more important metric than distance."). Or to simply disregard any difference in convenience between the relevant fora where it is comfortable concluding that a witness would have to travel a significant distance regardless of whether the action is transferred or not. *See In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York to either Texas or California venues); *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses); *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at \*6 (Fed. Cir. Oct. 13, 2021). It has even gone as far as opining that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google*, 2021 U.S. App. LEXIS 29137, at \*12.

6

Zebra represents that they have over 1,000 employees in its Holtsville, New York office, many of whom have worked on the Accused Products. Honeywell argues that Zebra's Austin office, housing approximately 50 employees, weighs against transfer.

*Zebra Personnel*. Zebra argues that the following Holtsville-based Zebra personnel are potential witnesses. Dawn Fennessy and Don Jones purportedly headed the team involved in the research and development of the TC75 mobile computing devices, which Plaintiffs accused. ECF No. 24 at 6. Pete Musteric was the original engineering lead for the ShareCradle technology, which the Complaint also recognizes as the accused TC52 product. ECF No. 24 at 6; ECF No. 1 ¶ 66. Prashanth Kadur helped develop the StageNow technology. ECF No. 24 at 6–7. Charles Torzilli and Ron Ethe allegedly led the team responsible for Zebra's accused DS8108 and related barcode scanners. *Id.* at 7. David Snook and David Chu led the development of the accused TC52 mobile computing device. *Id.* The Court is satisfied that these eight potential witnesses likely have knowledge relevant to technical issues in this Action.

Plaintiffs note that Zebra identified the following Austin-based Zebra product managers as being involved in the design, development, and testing of Accused products, like "rugged tablet products": Patrick Brumbaugh, Brent Donahoo, and Todd McCracken. ECF No. 33 at 14–15. Moreover, Zebra's corporate witness further testified that Patrick Seidensticker, project management lead for mobile computers and tablets and the site lead at Zebra's Austin facility has "potentially relevant knowledge of the accused products." ECF No. 33 at 8. The same corporate witness also did not deny that Austin-based Zebra personnel like Kent Landry, a director of sales, Kevin DeSpain, a vice president of sales, and Thomas Pruitt, a director of enterprise architecture, may have knowledge relevant to this Action. ECF No. 33 at 8.

Though Zebra concedes that there are Zebra employees in Austin "with knowledge concerning the accused rugged tablets," it chides Plaintiffs for failing to depose any of the Austin-based personnel Plaintiffs rely on and accuses Plaintiffs of engaging in speculation. Yet it was Zebra that first identified Mr. Brumbaugh, Mr. Donahoo, and Mr. McCracken as being involved in the design, development, and testing of one or more of the Accused Products. *See* ECF No. 34-5 at 5–20. And it was Zebra's corporate representative who testified that Mr. Seidensticker could answer technical questions relevant to some Accused Products. ECF No. 33-3 at 49:12–24, 83:9–84:3. The presence of these Zebra personnel in Austin, therefore, weighs against transfer.

Yet the Court agrees with Zebra that the relevance of Mr. Landry, Mr. DeSpain, and Mr. Pruitt is more speculative. Plaintiffs found these potential witnesses on LinkedIn and were unable to elicit from Zebra's corporate representative any testimony that these personnel possess relevant information. *See* ECF No. 33-3 at 55:8–59:17, 70:3–72:13. The Court has little confidence, then, that these potential witnesses have relevant and material knowledge. *See also In re Google*, 2021 U.S. App. LEXIS 29137, at *20 (allocating no weight to a potential witness that plaintiff found on LinkedIn because plaintiff "was not at all specific about what testimony it expected to elicit from [that witness], or even if he possesses knowledge of the facts relevant to this infringement action"); *Logantree LP v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 U.S. Dist. LEXIS 85164, at *20 (W.D. Tex. May 11, 2022) ("Gauging and articulating the relevance of a party's personnel to a particular case—especially personnel from a company the size of Apple—based only on vague LinkedIn profiles is a challenge."). Their presence in this District is accorded little weight.

Zebra further identified potentially relevant witnesses beyond New York and Texas. Zebra named California-based Allan Herrod as having knowledge relevant to StageNow. ECF No. 24 at 6. And Arizona-based Chris Brock and California-based Chin-Hing Jwo purportedly led the teams

developing the "accused scan engines" and "continue to travel back to Holtsville as part of their job responsibilities to this day." *Id.* at 7. Zebra further contends that Ohio-based John Pomerleau helped lead the development of the TC52. *Id.* Plaintiffs note that Zebra's declarant explicitly referred to Marc Weinstein in Illinois as having knowledge related to ShareCradle Technology. ECF No. 33 at 8. Zebra also conceded that its sales and finance witnesses are likely based in Illinois or Pennsylvania. *Id.*; ECF No. 24-1 ¶ 22. Plaintiffs do not dispute that these non-New York witnesses have relevant and material knowledge.

The Court finds that witnesses living in California and Illinois are too remote from this District and the EDNY to have much effect under this factor. *See In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). As to Chris Brock and Chin-Hing Jwo, because they apparently continue to work out of the Holtsville office regularly, traveling to the EDNY for trial may not draw them away from work to the same extent traveling to Waco would. *See In re Google, LLC*, 2021 WL 4427899, at *4 (placing emphasis on the inconvenience posed by forcing a witness to "travel to a distant forum and to be away from their homes and *work*" (emphasis added)).[1]

Finally, Zebra argues that six of its New York-based employees constitute prior art witnesses. ECF No. 24 at 7. Four are inventors of U.S. Patent No. 7,204,418 (the "'418 patent") and two are simply listed as "[p]rior art witnesses for the asserted '474 patent." *Id.* Strangely, Zebra's supporting declaration does not characterize these personnel as prior artists. Instead, it

---

[1] Plaintiffs contend that these numerous non-New York potential witnesses suggest that Zebra has overemphasized the criticality of Holtsville and the employees residing there. ECF No. 33 at 8. This is not persuasive. The presence of relevant Zebra personnel elsewhere does not render the Holtsville-based personnel somehow less relevant or suggest that significant design, development, and testing of Accused Products did not actually occur there.

merely attests that they are "knowledgeable about the design, development, and operation of one or more of the Accused Products." ECF No. 24-1 ¶ 19. This Court will not credit conclusory allegations that a reference constitutes relevant prior art. Zebra has not provided the Court any evidence with which it can weigh the relevance of the asserted prior art. *Cf. Logantree LP v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 U.S. Dist. LEXIS 85164, at *14 (W.D. Tex. May 11, 2022) (giving weight to prior artists after defendant provided charts mapping the prior art to the asserted claims). Accordingly, the Court disregards these Zebra witnesses. (The Court also disregards those nonparty prior art witnesses Zebra identifies as residing near the EDNY, ECF No. 24 at 8, under the same rationale.)

*Honeywell Personnel.* Honeywell argues that it has relevant Texas-based personnel working in two divisions: Honeywell's Advanced Sensing Technologies ("AST") business group; and Honeywell's Productivity Solutions and Services ("PSS") business group. ECF No. 33 at 4–5, 9–10. According to Plaintiffs:

> At a high level, AST researches, designs, develops, manufactures, and tests scan engines which are then sold externally to third parties or embedded in products designed and developed by PSS. In addition to researching, designing, developing, manufacturing, and testing the scanner and mobility products, PSS also researches, designs, develops, manufactures, and tests several "in house" scan engines that are exclusively used in Honeywell products.

ECF No. 33-4 at 6. Plaintiffs claim that AST's president, CFO, CTO, general counsel, and director of engineering project management all reside in Richardson, Texas. ECF No. 33 at 9. Also in Richardson is PSS's general counsel. *Id.*

In response, Zebra questions the significance of Honeywell's contacts with Richardson. ECF No. 41 at 3. "Honeywell's documents and witnesses—particularly those connected to Honeywell's Richardson facility—are minimally relevant to damages at best." *Id.* The Court agrees. While the Complaint alleges that Honeywell has products embodying some of the Asserted

10

Patents, *see* ECF No. 1 ¶ 19, Plaintiffs have not alleged that AST or PSS were in any way involved in the design, development, and testing of the inventions claimed in the Asserted Patents (or at the very least, Plaintiffs' opposition fails to make or cite to any such allegations). The faces of the Asserted Patents do not list any inventors in Texas nor have Plaintiffs argued that any named inventors transitioned to the Richardson facility. Plaintiffs do not offer a clear and persuasive articulation for what relevant testimony most of these Richardson personnel may offer. The Court gives minimal weight to the Richardson-based general counsel; their testimony regarding Honeywell's licensing activities could support Plaintiffs' damages case. The Court disregards the convenience of Honeywell's other Texas-based employees because Plaintiffs have failed to show relevance.[2]

*Conclusion*. On balance, the Court finds that this factor favors transfer. Though Plaintiffs have shown that there are at least four relevant Zebra employees in Austin and a couple of questionably relevant witnesses in Richardson, Zebra has shown that there are eight individuals involved in the design, development, and marketing of the accused products residing in the EDNY and two more regularly traveling to the EDNY as part of their job. Thus, the cost of attendance and convenience of the witnesses weighs in favor of transferring to the EDNY.

### 2. Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in

---

[2] Plaintiffs also list several AST and PSS personnel residing in North Carolina. ECF No. 33 at 9. The Court accords them little to no weight as they will have to travel a significant distance regardless of transfer. *See* ECF No. 33 at 10.

person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue*." In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021). Further, this Court cannot "discount" third-party "entities" having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness.").

*New York Witnesses*. The only nonparty witnesses Zebra identifies are named inventors of patents Zebra alleges constitute prior art, U.S. Patent Nos. 7,204,418 (the "'418 patent"), 5,343,028

(the "'028 patent"), and 6,254,003 (the "'003 patent"). ECF No. 24 at 7–8.[3] Zebra alleges that inventors of the '418, '028, and '003 patents live within the EDNY's subpoena power. *Id.* at 8.[4] As it did with Zebra's employee-prior artists, the Court disregards these nonparty prior artists because Zebra has not made any showing as to the prior art's relevance (or as Zebra puts it, "viability"). The '003 patent is an exception: it is cited on the face of at least the asserted '206, '269, and '767 patents, suggesting some relevance to the relevant patent claims. Nevertheless, the Court disregards the named inventors on the '003 patent because the Court has no reliable evidence as to where the named inventors live. Zebra seems to rely on the location identified on the face of the '003 patent. But that patent issued more than twenty years ago; the Court does not find that a twenty-year-old patent is credible evidence of the current location of named inventors.

*Texas Witnesses*. Honeywell argues that the following are relevant nonparty witnesses that can be compelled to testify in this District: Tom Wilkinson, the former CEO of Xplore; Brian Bell, the former head of product development and engineering; and Tom Kost, the former senior project manager and direct of product marketing for Xplore and Zebra. ECF No. 33 at 6. The parties dispute the relevance of Xplore to this Action. According to Zebra's Motion, "The technologies and products at issue here were developed long before 2018 and Xplore," when Zebra acquired Xplore, "and Xplore played no role in developing the accused technologies." ECF No. 24 at 3. Plaintiffs disagree, arguing that "[a]lmost a dozen of the accused mobile computer products are

---

[3] Zebra also alleges that U.S. Patent No. 6,832,729 is prior art and the inventor(s) live in Rhode Island. There is no indication, however, that the EDNY has the power to compel any of those inventors and therefore this Court accords them no weight under this factor.

[4] This Court typically presumes that potential witnesses within the State in which transferee district are subject to compulsory process under Federal Rule of Civil Procedure 45(c)(1)(B), even if beyond the 100-mile radius of Rule 45(c)(1)(A)—like the inventors of the '003 patent. The Court will generally not, at this very early stage of the case, disqualify such witnesses on the ground that they would "incur substantial expense" in traveling to testify. Fed. R. Civ. P. 45(c)(1)(B).

rugged tablets and computers originally designed and developed by Xplore." ECF No. 33 at 1–2. According to Plaintiffs, Zebra drafted its Motion without the benefit of Plaintiffs' infringement contentions, served by the time Plaintiffs filed their opposition to Zebra's Motion. Those contentions purportedly "accuse the Xplore Products of infringing a variety of technologies for three of the asserted patents, including various hardware limitations." *Id.* at 2. Zebra's reply, drafted in view of those contentions, seems to concede that Mr. Wilkinson, Mr. Bell, and Mr. Kost possess information about the design and development of those "Xplore Products," but suggests that Zebra's Holtsville personnel "possess and have access to similar information." ECF No. 41 at 2 n.2.

Given these statements in reply, the Court accepts that Mr. Wilkinson, Mr. Bell, and Mr. Kost have knowledge relevant to the design and development of some Accused Products. The fact that there may be personnel in Holtsville with similar information is of no moment. These Austin-based former Xplore employees have relevant and material knowledge; Zebra does not get to disqualify them as potential witnesses merely because there may be Holtsville-based personnel with similar knowledge. The Court finds that these former Xplore employees weigh against transfer because they seemingly have relevant and material knowledge, there is no indication they are willing to testify, and they are within this Court's subpoena power.

*Conclusion*. The Court has disregarded Zebra's nonparty witnesses in or near the EDNY while crediting the three former Xplore employees in this District. Accordingly, this factor favors transfer.

### 3. Relative Ease of Access to Source of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019). This factor

relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. "[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340; *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having consistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic evidence. *See Def. Distributed v. Bruck*, 30 F.4th 414, 434 & n.25 (5th Cir. 2022) (giving weight to the location of servers hosting the electronic documents in dispute); *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021). The Federal Circuit has held, however, that it is error not to also consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021); *see also Def. Distributed*, 30 F.4th at 434 & n.25 (considering, under this factor, where the "research, design, development, manufacturing, and publishing" of the allegedly offending files occurred). Finally, evidence located at a party's office that is not a "place of regular business" may be discounted. *See In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022).

This factor favors transfer. It seems to this Court that the majority of the design and development of the Accused Products occurred in or around Holtsville. *See* ECF No. 24 at 9. The Federal Circuit has time and again reminded this Court to look to where the custodians of relevant electronic documentation is, as they may bear on the relative ease of access to sources of proof. Accordingly, the location of several relevant personnel in Holtsville likely acting as custodians for relevant technical documentation pushes this factor toward transfer. The Court is also persuaded that there may be relevant custodians in Austin given Xplore's development of some Accused Products out of the Austin facility. But based on the record before it, the Court is satisfied that more design and development work occurred in or around the Holtsville facility such that it is likely easier to access more evidence in the EDNY than in this District. (And Federal Circuit precedent is clear that the location of servers outside the relevant districts does not render the location of the custodians of those documents irrelevant.)

Plaintiffs argue that Honeywell likely has significant documentary evidence—financial, business, and research and development related documents—in or around Richardson, where the AST group is based. But, as the Court held above, Plaintiffs have not made a persuasive showing regarding the relevance of conduct occurring in Richardson. The Court accords some weight to damages-related documents there and recognizes, as it has done many times before, that the bulk of relevant evidence in a patent infringement case will come from the accused infringer. *In re Genentech, Inc.*, 566 F.3d at 1345.

For those reasons, the Court finds that this factor favors transfer.

### 4. Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when

ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout*, 2021 U.S. App. LEXIS 30500, at *12. Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

This case has not proceeded to a *Markman* hearing and so has not yet matured to a stage where this factor biases toward transfer. But Plaintiffs assert that the presence of a co-pending case in this Court, involving all parties to this Action, counsels against transfer. ECF No. 33 at 11 (citing Case No. 6:21-cv-1008-ADA, ECF No. 1 (Complaint)). Plaintiffs allege that these two cases involve some patents from the same family and similar accused products. *Id.* Zebra argues that this Court should ignore that co-pending case because it is stayed pending resolution of an ITC investigation. ECF No. 41 at 4.

In view of the above, this factor weighs against transfer, but only slightly so. The Court finds that judicial economy is served by having this Court preside over two cases involving the

same parties, the same or similar technology, and related patents. Yet the fact that this co-pending case is statutorily stayed diminishes the force of that judicial economy argument. And because there is only one co-pending case, this factor is given less weight. *See Correct Transmission LLC v. Adtran, Inc.*, No. 6:20-CV-00669- ADA, 2021 WL 1967985, at *4 (W.D. Tex. May 17, 2021). Accordingly, this factor favors keeping this Action here, but only slightly so.

### C.    Public Interest Factors

#### 1.    Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit has held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. In another case, it has opined that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021). It has further ruled that, in the event time-to-trial statistics favor one district over another, the court must "point to any reason that a more rapid disposition of the case that might be available in Texas is worthy of important weight." *In re Juniper Networks*, 14 F.4th at 1322; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380–81 (Fed. Cir. 2021).

18

The Court finds that this factor favors keeping this Action here. Zebra concedes that this District's time-to-trial statistics beat those of the EDNY *by years*. ECF No. 24 at 13 n.5; *see also* ECF No. 33 at 12 (noting time-to-trial statistics in this Division). The Court finds that dispositive under this factor. Zebra's comparison of the number of patent cases on this Court's docket and the transferee court's docket is meaningless. ECF No. 24 at 13.

For those reasons, the Court finds that this factor weighs against transfer.

2. <u>Local Interest</u>

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). The Federal Circuit has accorded significant weight under this factor to the location where the accused product or functionality was "designed, developed, and tested." *In re Apple*, 979 F.3d at 1345. It has accorded no weight to the location of the sale of an accused product where that product is offered nationwide. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Courts should not heavily weigh a party's general presence in the forum. *In re Apple*, 979 F.3d at 1345. For example, the Federal Circuit recently attributed error to this Court for granting even *some* weight to Apple's significant general presence in this District. *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) ("The court's reliance on [the defendant's Austin] offices, which lack such a connection to the locus of the events giving rise to the dispute, amounts to a clear abuse of discretion.").

19

"Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed*, 30 F.4th at 435. Yet the Federal Circuit has instructed that plaintiff's residence in the transferor forum is owed no weight if it is "recent and ephemeral." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). The Federal Circuit has also clarified that a plaintiff's residence is owed zero weight if it lies beyond the transferor judicial district, even if just so. *See In re Apple*, 2022 WL 1676400, at *2 (granting little to no weight to the design, development, and testing of the claimed invention occurring just over 100 miles from the transferor court); *In re Google*, 2021 WL 4592280, at *6 (finding error with district court's reliance on plaintiff's office in Texas, where the office was located outside this District).

The Court finds that this factor favors transfer. The Federal Circuit has repeatedly admonished this court to focus on "significant connections between a particular venue and the events that gave rise to a suit." *In re Apple Inc.*, 979 F.3d at 1345. The Court is satisfied that events giving rise to this Action occurred in or near the EDNY given Zebra's credible allegations that it developed "the vast majority" of Accused Products in the EDNY.

Likewise, the Court is satisfied that at least some development related to rugged tablet occurred in or near Austin, Texas by Xplore. But, in the Court's estimation, more design and development, across the entire category of Accused Products, occurred in the EDNY. Accordingly, Xplore's activities in Austin do not counterbalance that design and development in Holtsville. (The Court discounts Honeywell's connection to Richardson, Texas, to the extent it is even relevant to this Action, because Richardson lies outside of this District. *See In re Apple*, 2022 WL 1676400, at *2; *In re Google*, 2021 WL 4592280, at *6.) The Court finds, therefore, that this factor favors transfer.

3.  <u>Familiarity of the Forum with Law-at-Issue</u>

Honeywell argues that this factor disfavors transfer because this Court has presided over more patent cases over the past three years. ECF No. 33 at 14. This Court finds no reason to question the EDNY's familiarity and ability to fairly apply patent law and therefore finds this factor to be neutral.

4.  <u>Conflict of Laws</u>

Both parties agree that this factor is neutral. ECF No. 24 at 19; ECF No. 33 at 22. This Court agrees that this factor is neutral.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs against transfer |
| Cost of attendance for willing witnesses | Favors transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs slightly against transfer |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Ordinarily, this would mean that the defendant has not met its burden to show the transferee venue is clearly more convenient. But the Court gives the "practical problems" factor less weight because the Federal Circuit has held that judicial economic considerations from related cases cannot "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor. *In re Zimmer Holdings, Inc.*, 609

F.3d 1378, 1382 (Fed. Cir. 2010). And the Federal Circuit has consistently told the Court to diminish the weight given to the docket-congestion factor. Zebra has more sources of proof and willing witnesses in the New York area. The EDNY likely has a stronger localized interest because of Zebra's significant general presence there coupled with significant development, design, and testing there. The location of three former Xplore employees in this District, along with some design and development work, has not stopped Zebra from showing that the EDNY is a clearly more convenient venue.

**IT IS ORDERED** that Defendants' Motion to Transfer Venue to the Eastern District of New York (ECF No. 24) is **GRANTED**. The Court's Clerk is directed to transfer this Action to the U.S. District Court for the Eastern District of New York.

SIGNED this 7th day of June, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE